UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN RAILROADS, UNION PACIFIC RAILROAD COMPANY, and BNSF RAILWAY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA OFFICE OF SPILL PREVENTION AND RESPONSE; THOMAS M. CULLEN, JR., CALIFORNIA ADMINISTRATOR FOR OIL SPILL RESPONSE, in his official capacity; and KAMALA D. HARRIS, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, in her official capacity,<br><br>Defendant. | No. 2:14-cv-02354-TLN-CKD<br><br>**ORDER** |

This matter is before the Court pursuant to Defendants California Office of Spill Prevention and Response; Thomas M. Cullen, Jr., California Administrator for Oil Spill Response ("Administrator"); and Kamala D. Harris, Attorney General of the State of California's (collectively "Defendants") Motion to Dismiss Complaint for Injunctive and Declaratory Relief. (ECF No. 18.) The Court has carefully considered the arguments raised in Defendants' motion and reply as well as Plaintiffs Association of American Railroads, Union Pacific Railroad Company, and BNSF Railway Company's (collectively "Plaintiffs") opposition. For the reasons

1

set forth below, Defendants' Motion to Dismiss (ECF No. 18) is hereby GRANTED.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 20, 2014, the State of California passed S.B. 861, imposing a variety of regulations for the transportation of "oil through or near the waters of the state[,]" including by railroad. (Compl., ECF No. 1 at ¶¶ 4, 34, citing Cal. Gov. Code § 8670.2(k).) S.B. 861 amended and expanded the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("Lempert-Keene Act"), Cal. Gov. Code §§ 8574.1–8574.10, 8670.1–8670.95 and Cal. Pub. Res. Code §§ 8750–8760. (Def. Mem. of Points and Authorities in Supp. of Mot. to Dismiss Compl. for Inj. and Decl. Relief, ECF No. 18-1 at 7.)

S.B. 861 requires carriers of oil "operating in the waters of the state or where a spill could impact waters of the state…[to] have an oil spill contingency plan that has been submitted to, and approved by, the administrator[.]" Cal. Gov. Code § 8670.29(a). It also requires owners or operators of facilities where a spill could impact waters of the state to apply for and obtain a certificate of financial responsibility issued by the Administrator in order to transport oil across waters of the state. Cal. Gov. Code § 8637.51(d). S.B. 861's aforementioned requirements will not be enforced by the Office of Spill Prevention and Response ("OSPR") until after emergency regulations[1] have been promulgated. (ECF No. 18-1 at 12–13.) The Administrator has not yet imposed any affirmative obligations on any facilities subject to the new requirements and has not adopted any regulations implementing S.B. 861.[2] (ECF No. 18-1 at 12.) The OSPR has indicated that the regulations will allow ninety (90) calendar days to permit facilities[3] that transport oil to comply with all new requirements before enforcement actions may be taken. (ECF No. 1 at n. 3.)

On October 7, 2014, Plaintiffs filed a complaint seeking injunctive and declaratory relief against Defendants to enjoin enforcement of S.B. 861. (ECF No. 1.) Plaintiffs claimed as

---

[1] California Government Code Section 8670.7.5 construes regulations promulgated under S.B. 861 as emergency regulations.
[2] On October 29, 2014, the parties stipulated to reschedule the hearing for Plaintiffs' Motion for Preliminary Injunction to January 15, 2015, "on the condition that Defendants refrain from issuing, on an emergency basis or otherwise, or sending to the California Office of Administrative Law, any regulation or order implementing any portion of S.B. 861 concerning or affecting railroads, before the Court holds a hearing on [Plaintiff's Motion for Preliminary Injunction] or January 31, 2015, whichever is earlier." (ECF No. 17 at 2.)
[3] California Government Code Section 8670.3(g)(1) defines facility as, *inter alia*, a railroad that transports oil as cargo.

2

follows: (1) the oil spill contingency plan requirements of S.B. 861 are preempted by the Federal Railroad Safety Act ("FRSA") and thus violate the Supremacy Clause; (2) the express and de facto oil spill contingency plan permitting pre-clearance requirements in S.B. 861 are preempted by Interstate Commerce Commission Termination Act ("ICCTA"), and thus violate the Supremacy Clause; (3) the "best achievable technology" requirement in S.B. 861 is preempted by the FRSA, the Locomotive Inspection Act, and the Safety Appliance Act, and thus violates the Supremacy Clause; (4) the "best achievable technology" requirement in S.B. 861 violates the Interstate Commerce Clause; (5) the financial responsibility requirements of S.B. 861 are preempted by ICCTA and thus violate the Supremacy Clause; and (6) the "cease and desist" provision of S.B. 861 is preempted under ICCTA and thus violates the Supremacy Clause. (ECF No. 1 at ¶¶ 56–67.) On October 30, 2014, Defendants filed a Motion to Dismiss.[4] (ECF No. 18.)

## II. LEGAL STANDARD

A party may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Federal Rule of [Civil] Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (abrogated on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)). "'Unless the jurisdictional issue is inextricable from the merits of a case, the court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1)[.]'" *Robinson v. U.S.*, 586 F.3d 683, 685 (9th Cir. 2009) (internal citations omitted). If the court determines at any time that it lacks subject matter jurisdiction "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

In addition to pleading valid jurisdiction, a plaintiff must also allege facts giving rise to a case or controversy which is "ripe" for adjudication. *See United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439 (1993). A court's subject matter jurisdiction is limited to matters "ripe" for adjudication, and if a case is not ripe, the court should dismiss it. Fed. R. Civ. P. 12(b)(1); *Chandler v. State Farm Mutual Automobile Insurance Co.*, 598 F.3d 1115, 1121,

---

[4] On October 10, 2014, Plaintiffs filed a Motion for Preliminary Injunction against Defendants seeking a preliminary injunction to prohibit enforcement of S.B. 861. (ECF No. 6-1 at 8.) The Court addresses this Motion to Dismiss first.

1122 (9th Cir. 2010).

**III.   ANALYSIS**

   **a.   Ripeness**

Plaintiffs claim that their case is ripe because they have a concrete plan (in conformity with the ripeness requirements) to deliver oil through California and have received three letters warning them that enforcement of S.B. 861 will occur. (Pl. Opp'n to Def. Mot. to Dismiss, ECF No. 22 at 18.) Defendants assert that Plaintiffs' claims are not ripe because they constitute a pre-enforcement challenge and there is no threat of imminent prosecution. (ECF No. 18-1 at 14.)

The ripeness doctrine is "'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993)). The basic rationale behind the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements," when those "disagreements" are premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580–81 (1985). "[P]ure legal questions that require little factual development are more likely to be ripe." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). "By contrast, if the legal question depends on numerous factors for its resolution, extensive factual development may be necessary." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006).

The ripeness doctrine contains both constitutional and prudential components. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 1999). Initially, the Court solely addresses constitutional ripeness.[5]

     1.   Constitutional Ripeness

Article III mandates that prior to a court's exercise of jurisdiction there must exist a

---

[5] Since the Court finds herein that Plaintiffs' claims are constitutionally unripe, the Court declines to address the parties' prudential ripeness arguments. *See Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, n. 3 (9th Cir. 2014) (citing *Susan B. Anthony v. Driehaus*, 134 S.Ct. 2334 (2014)) (holding the district court correctly dismissed the case due to lack of constitutional ripeness so there is no need to analyze prudential standing or prudential ripeness).

constitutional "case or controversy," that the issues presented are "definite and concrete, not hypothetical or abstract." *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945). Therefore, the question is whether the plaintiffs face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979), or whether the alleged injury is too "imaginary" or "speculative" to support jurisdiction. *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000).

An Article III injury can occur even without "an actual arrest, prosecution, or other enforcement action[.]" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2342 (2014). However, while it is well-established that an individual need not await prosecution before challenging it, courts still require a "genuine threat of imminent prosecution". *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). The Ninth Circuit has held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the "case or controversy" requirement. *See, e.g, San Diego County Gun Rights Comm.*, 98 F.3d at 1126-27. Plaintiffs must face a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement[.]" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Thus, "[w]hen plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Id.* (citing *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

"In evaluating the genuineness of a claimed threat of prosecution, [courts] look to: (i) whether the plaintiffs have articulated a "concrete plan" to violate the law in question; (ii) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (iii) the history of past prosecution or enforcement under the challenged statute." *Loyd's Aviation, Inc. v. Ctr. for Envtl. Health*, No. 1:11-CV-01078 AWI DLB, 2011 WL 4971866, at *3 (E.D. Cal. Oct. 19, 2011) (citing *Anchorage*, 220 F.3d at 1139). A plaintiff must establish all three elements in its favor in order to survive a motion to dismiss on ripeness grounds. *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006).

///

*i.    Concrete Plan*

A concrete plan requires more than a hypothetical intent to violate the law. *Anchorage*, 220 F.3d at 1139. "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Id.* Here, Plaintiffs state that they have "articulated a concrete plan to deliver oil through California—the conduct that S.B. 861 criminalizes[.]" (ECF No. 22 at 18 internal quotations omitted.) However, S.B. 861 criminalizes, *inter alia*, "continuing operations for which an oil spill contingency plan is required without an oil spill contingency plan[,]" Cal. Gov. Code § 8670.64(c)(2)(C); "knowingly fail[ing] to begin cleanup, abatement, or removal of spilled oil[,]" Cal. Gov. Code § 8670.64(a)(4); and failing to perform other notification and post-oil spill requirements, Cal. Gov. Code 8674.64–8674.67.

Plaintiffs do not allege that they will fail to create and seek approval of an oil spill contingency plan or to perform the clean-up procedures in S.B. 861. Rather, Plaintiffs merely claim that they face a dilemma: "incur the costs of compliance with S.B. 861's mandates or risk prosecution that the State has thrice threatened." (ECF No. 22 at 19.) "The mere assertion of a desire to engage in a prohibited activity, particularly when the 'acts necessary to make plaintiffs' injury—prosecution under the challenged statute—materialize are almost entirely within plaintiffs' own control' is too indefinite to constitute a 'concrete plan.'" *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1128 (C.D. Cal. 2012) (citing *San Diego Cnty.*, 98 F.3d at 1127).

Here, compliance with the regulations will be within Plaintiffs' own control. Plaintiffs only generally allege that they will be injured once the regulations come out. (ECF No. 22 at 20.) Those injuries would be the cost of complying with the statute, i.e. "the hundreds of thousands or millions of dollars in out-of-pocket expenses" to "prepare the studies and compile the information necessary to assemble a contingency plan [and to apply for a certificate of financial responsibility] that [meet] the mandates of California Government Code sections 8670.28 and 8670.29." (ECF No. 22 at 11–12). Therefore, Plaintiffs do not prove that they in fact have a concrete plan to violate S.B. 861, but rather argue that compliance will cost them a significant amount of money.

Plaintiffs contend that they should not be forced to choose between incurring the costs of

6

complying with S.B. 861's mandates or risking prosecution. (ECF No. 22 at 19.) They rely on *MedImmune*, 549 U.S. at 128–29 (2007) for the proposition that "where a threatened action by *government* is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." (ECF No. 22 at 18.) In *MedImmune*, the court discusses several cases where the plaintiffs eliminated the imminent threat of harm by simply not doing what they claimed they had a right to do (i.e. the plaintiffs complied with the law). However, the court determined that this did not preclude subject-matter jurisdiction because the threat-eliminating behavior (complying with the law) was effectively coerced. *MedImmune*, 549 U.S. at 129.

Here, Plaintiffs have not been coerced, or even "effectively coerced" into complying with S.B. 861. There are no implementing regulations for S.B. 861 and Plaintiffs have not been threatened with prosecution, as discussed below. (ECF No. 18-1 at 15.) Furthermore, unlike in *MedImmune*, where plaintiffs' own action in failing to violate the law eliminated the imminent threat of prosecution, here there is no action or inaction by Plaintiffs. Furthermore, the cases cited in *MedImmune*, which the courts found as ripe, all involved challenged statutes that were already in force. Here, the law is not in force yet because there are no regulations implementing S.B. 861. (ECF No. 18-1 at 12.) Plaintiffs cannot be coerced into complying with regulations that are not in force or even in existence.

Therefore, Plaintiffs do not establish that they had a concrete plan to violate the law.

       *ii.  Specific Warning or Threat to Initiate Proceedings*

As for the second factor, there must be a specific warning or threat of enforcement directed at Plaintiffs. Plaintiffs argue that "[t]he prosecuting authorities have sent no fewer than three letters directly to [Plaintiffs] warning explicitly that as soon as the impending emergency regulations come out, Plaintiffs will have 90 calendar days to comply with all new requirements, except for environmentally sensitive sites, before enforcement actions are taken." (ECF No. 22 at 18, emphasis and internal quotations omitted.) Defendants assert that, because there are no finalized regulations implementing S.B. 861, the penalties in S.B. 861 could not be imposed on railroads lacking approved plans or certificates. (ECF No. 18-1 at 16.) Further, they dispute

1  Plaintiffs' claim that the aforementioned letters were threats, arguing that they merely contained
2  information regarding an estimated timeline for regulations and compliance. (Def. Reply Mem.
3  of Points and Authorities in Supp. of Mot. to Dismiss Compl. for Inj. and Decl. Relief, ECF No.
4  27 at 5.)

5  Pre-enforcement review is permitted under circumstances that render the threatened
6  enforcement sufficiently imminent. *Susan B. Anthony List*, 134 S. Ct. at 2342; *see Steffel*, 415
7  U.S. at 459–60 (finding a credible threat of enforcement when the plaintiff had been warned to
8  stop handbilling, threatened with prosecution if he disobeyed, stated his desire to continue
9  handbilling, and had a companion who was prosecuted for the same offense); *Holder v.*
10 *Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (holding that the plaintiffs had a credible threat
11 of enforcement when the plaintiffs claimed that they provided support to groups designated as
12 terrorist organizations prior to a law's enactment, they would provide similar support in the
13 future, and the government had charged 150 persons with violating the law and refused to
14 disavow prosecution of the plaintiffs if the plaintiffs resumed their support).

15 Plaintiffs' Motion to Dismiss includes a copy of a letter from the Administrator to
16 Plaintiff Union Pacific Railroad Co. stating that the remedies contained in California Government
17 Code Sections 8670.65 and 8670.67, codifying the provisions of S.B. 861, would not be sought in
18 relation to the contingency plan and certificate of financial responsibility requirements until after
19 the emergency regulations are in place and the regulatory compliance periods are over. (Ex. B to
20 Decl. of E. Ben, ECF No. 22-3 at 3–4.) The letter does not make a threat to prosecute Plaintiffs,
21 but rather makes a general statement about when enforcement will begin. *See Poe v. Ullman*, 367
22 U.S. 497, 501 (1961) (holding that allegations of intent to prosecute offenses and of what
23 constitute offenses are not sufficient to establish an immediate threat of enforcement); *see also*
24 *San Diego Cnty.*, 98 F.3d at 1127 ("[A] general threat of prosecution is not enough to confer
25 standing."). Plaintiffs do not allege that the letters were specific threats of prosecution against
26 them by Defendants or that their current operations will necessarily violate S.B. 861. Thus, the
27 general statements about the impending regulations made by Defendants are not sufficiently
28 imminent. *See Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 4–5 (9th Cir.

1974) (holding that the Sheriff's statement that all the laws of the county would be enforced within his jurisdiction and that gambling is illegal under county ordinance lacked immediacy and raised serious questions of non-justiciability of appellants' claims). Therefore, Plaintiff hasn't shown there is a specific warning or threat of enforcement directed at Plaintiffs.

        *iii.     History of Past Prosecution or Enforcement Under the Challenged Statute*

As there are no implementing regulations in place for S.B. 861, past prosecution or enforcement is non-existent here. (ECF No. 18-1 at 12.) *See Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (finding that past prosecution or enforcement has little weight in the constitutional ripeness analysis where the Code is relatively new and the record contains little information as to enforcement or interpretation).

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Complaint for Injunctive and Declaratory Relief (ECF No. 18) is hereby GRANTED. Accordingly, the pending motion for preliminary injunction is denied as moot.[6] (ECF No. 6.)

IT IS SO ORDERED.

Dated: June 17, 2015

                                      Troy L. Nunley
                                      United States District Judge

---

[6] Defendants assert that Plaintiffs' claims against the OSPR should be dismissed because they are barred by the Eleventh Amendment. (ECF No. 18-1 at 23.) The Court declines to decide this issue due to the dismissal of the entirety of Plaintiffs' claims.

9